# EXHIBIT "B"

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE TRANSPACIFIC AIR PASSENGER ANTITRUST LITIGATION | MDL Docket No. 1913 |

**DEFENDANTS' MEMORANDUM IN RESPONSE TO CERTAIN PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS**

Defendants Air New Zealand Ltd., All Nippon Airways Co., Ltd., Cathay Pacific Airways Ltd., China Airlines, Ltd., Japan Airlines International Co., Ltd., Northwest Airlines, Qantas Airways Limited, Singapore Airlines Limited, Thai Airways International Public Company Ltd. and United Air Lines Inc. (collectively, "Defendants"), respectfully respond to plaintiffs Donald Wortman, William Adams and Margaret Garcia's (the "Wortman plaintiffs") "Motion for Transfer and Consolidation of Related Actions to the Northern District of California Pursuant to 28 U.S.C. §1407."

Defendants agree with the Wortman plaintiffs that transfer and consolidation is appropriate for the seven pending actions that allege nearly identical facts regarding an alleged conspiracy to fix, raise, maintain or stabilize fuel surcharges for long-haul transpacific passenger airfares to and from the United States (collectively, the "Transpacific Cases").[1] Defendants also recognize the logic of transferring the Transpacific Cases to the San Francisco Division of the Northern District of California for consolidated pretrial proceedings. The Wortman plaintiffs' proposal, however, does not further the efficiency goals embodied in § 1407 because that

---

[1] As of the date of this filing, defendants understand that seven Transpacific Cases have been filed, six in the Northern District of California and one in the Central District of California. A list of those cases is attached as Exhibit A.

proposal advocates the assignment of three large unrelated MDL actions to the same judge, even if those actions are not consolidated into a single MDL proceeding. The Wortman plaintiffs apparently concede that the Transpacific Cases here are not sufficiently related to *In re International Air Transportation Surcharge Antitrust Litigation* ("*IAT MDL*") or *In re Korean Airlines Co., Ltd. Antitrust Litigation* ("*Korean MDL*") for those actions to be consolidated into a single MDL proceeding. Yet the Wortman plaintiffs cite those cases in support of their request that these Transpacific Cases be transferred to the judge handling the *IAT MDL*, who has designated the *Korean MDL* cases as "administratively related" pending the decision of this Panel.[2]

As set forth below, the underlying facts here are not sufficiently similar to the facts in *IAT MDL* or *Korean MDL* to justify the transfer requested by the Wortman Plaintiffs. Indeed, the *IAT MDL* and *Korean MDL* actions followed government criminal investigations and guilty pleas with respect to <u>different</u> air carriers, <u>different</u> routes, <u>different</u> proposed classes, and <u>different</u> claims. As a result, transferring the Transpacific Cases to the court(s) overseeing those matters will neither provide meaningful conservation of judicial resources nor promote case management consistency in overlapping proceedings, and there is no good reason to burden a single court with these entirely distinct class actions.

Therefore, if this Panel determines that the Transpacific Cases should be consolidated and transferred to the Northern District of California, defendants respectfully submit that the objectives of 28 U.S.C. § 1407(a) and the goals of efficiency and fairness to all parties would

---

[2] Although it is unclear to defendants whether it is pursuant to the same "administratively related" mechanism, a recent notation on the pacer docket indicates that the court handling the *IAT MDL* has also had one or more of the Transpacific Cases transferred to its docket.

best be served by transfer of the Transpacific Cases to a judge in the San Francisco Division of the Northern District to whom one of the Transpacific Cases was originally assigned and who the Panel, in its discretion, believes has suitable background, experience and workload. The district judges who were originally assigned to the Transpacific Cases -- The Honorable Jeffrey S. White, The Honorable Vaughan R. Walker, The Honorable Martin J. Jenkins, and The Honorable Maxine M. Chesney -- are all capable jurists. For the reasons set forth below, defendants believe that Judge White is the most appropriate choice for transfer and consolidation of the Transpacific Cases.

I.   **FACTUAL BACKGROUND**

As of the date of this response, defendants are aware of seven related cases pending in two districts -- six actions in the Northern District of California and one action in the Central District of California. The seven actions allege in general terms that defendants conspired to fix, raise, maintain or stabilize fuel surcharges for long-haul transpacific passenger transportation to and from the United States and seek identical relief under the federal antitrust laws. None of the complaints allege a worldwide conspiracy or claim that there is any connection to the alleged conspiracies in the *IAT MDL* or the *Korean MDL*. The Transpacific Cases all contain common allegations that the alleged conspiracy arose through trade association meetings, airline alliance meetings, and code-sharing agreements, and contain vague allegations of parallel conduct in the form of airlines contemporaneously imposing similar or identical fuel surcharges.

Each complaint is styled as a putative class action and names some combination of Air New Zealand Ltd., All Nippon Airways Co., Ltd., American Airlines, Inc., AMR Corporation, Cathay Pacific Airways Ltd., China Airlines, EVA Airways Corporation, Japan Airlines International Co., Ltd., Malaysia Airlines, Northwest Airlines, Qantas Airways Limited,

Singapore Airlines Limited, Thai Airways International Public Company Ltd. and United Air Lines Inc.[3] Each of the complaints proposes a class period from 2004 to 2007 or the present, and each complaint is brought on behalf of the same putative class of plaintiffs who purportedly suffered injury as a result of defendants' alleged conduct.

The seven Transpacific Cases are all in their very inception. Indeed, the Wortman plaintiffs filed their motion with this Panel less than ten days after filing the first complaint, without even bothering to serve defendants.[4] No defendant has responded to any complaint; the parties have not initiated discovery (or held a Rule 26 conference); and no party has filed any motions in the underlying cases.

## II.   ARGUMENT

### A.   These Cases Are Unrelated to the Other MDLs Identified in the Wortman Plaintiffs' Motion

The Wortman plaintiffs' request that these cases be assigned to the same court handling the *IAT MDL* (and possibly the *Korean MDL*) is founded on the incorrect premise that the three purported class actions are related. They are not. The plaintiffs in the *IAT MDL* allege that the defendants, British Airways and Virgin Atlantic Airways, conspired to fix fuel surcharges on long-haul passenger flights with at least one segment arriving in or departing from the United Kingdom. Neither of those carriers is a defendant here.[5]

---

[3] American is named as a defendant in only one of the seven actions and does not join in this filing; United is named in four of the seven actions; Cathay Pacific, China Airlines and Malaysia Airlines are named in six of the seven actions. Otherwise, the named defendants are identical.

[4] As of the date of this response, only a few defendants have been validly served with any of the complaints.

[5] United Airlines and American Airlines are defendants in the *IAT MDL*, but in name only. United and American settled the claims against them in the *IAT MDL* in August 2006 (in

The complaints in the *Korean MDL* are similarly unrelated to this proceeding. Those complaints allege that Korean Airlines and Asiana Airlines -- again, not defendants here -- conspired to fix base rates and fuel surcharges on passenger flights between the United States and Korea. The complaints were filed on the heels of the DOJ's announcement that Korean Airlines had pled guilty to charges that it participated in conspiracies with a single competitor to fix the prices of air cargo and passenger flights. None of the Transpacific Cases name Korean Airlines or Asiana Airlines as a defendant, or allege that any of the named defendants conspired with either.

The Transpacific Cases also involve different flight routes, and thus different markets, than those in the *IAT MDL* and *Korean MDL* actions. As opposed to transpacific routes, the *IAT MDL* involves routes to and from the United Kingdom and the *Korean MDL* involves routes between Korea and the United States. Because antitrust analysis must focus on the individual characteristics of the alleged market in a particular case, the differences in routes and markets served will require examination of different facts and will likely raise distinct legal issues. *See, e.g., Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) ("As this action is about price-fixing activities conducted by defendants, grouping purchasers in all of these sub-markets together ignores the crucial differences in how defendants set prices for different purchasers").

---

settlements in which United and American paid nothing in damages). Moreover, an independent and objective neutral hired by the *IAT MDL* plaintiffs to evaluate the fairness of those settlements concluded that United and American were not involved in the alleged *IAT* cartel. All *IAT MDL* parties have consented to relieve United and American of any pleading or discovery responsibilities pending the approval of those settlements.

In August 2007, British Airways pled guilty to charges by the United States Department of Justice ("DOJ") that it participated in a conspiracy to fix fuel surcharges on long-haul passenger flights. The sole remaining defendant, Virgin Airlines, recently filed a stipulation of violation in the *IAT MDL*.

The Transpacific Cases also allege an entirely different purported class and class period. Here, the class is defined as all those who "purchased passenger air transportation, for long haul transpacific flights." (Wortman Compl. ¶ 33). In the *IAT MDL*, the class is defined as those who purchased passenger air transportation that included a flight "between the United States and the United Kingdom" or "between the United Kingdom and any destination." (IAT Compl. ¶ 17.) And in the *Korean MDL* complaints, the class is defined as all those who "purchased passenger air transportation . . . for travel between the United States and Korea." (Chae Compl. ¶ 11). Thus the purported class members in each group of cases traveled on entirely different routes, often on different sides of the world, and will not overlap significantly. Moreover, the alleged class period in the Transpacific Cases covers 2004 through 2007, or to the present, while the proposed *Korean MDL* class period begins in 2000 (Chae Compl. ¶ 11) and the *IAT MDL* class period spans 2004 to 2006 (IAT Compl. ¶ 17).

The Transpacific Cases here also allege a conspiracy quite different from those alleged in the *IAT* and *Korean MDLs*, i.e., a conspiracy purportedly evidenced by parallel conduct and purported opportunity to collude through industry meetings and trade organizations, as opposed to the affirmative allegations of direct communications to fix fuel surcharges alleged in the other actions. Finally, the Transpacific Cases here are very different from the *IAT MDL* and *Korean MDL* cases in that the key IAT and Korean defendants have already pled guilty to DOJ passenger conspiracy charges. As a result, those IAT and Korean defendants have essentially admitted liability, and those cases effectively will be only about the disputed measure of damages. In contrast, none of the Transpacific defendants have pled guilty to a passenger conspiracy.[6] Given

---

[6] Qantas, a defendant in the Transpacific Cases, has agreed to plead guilty to an air cargo conspiracy. However, the information charging Qantas with violating U.S. antitrust law includes

the substantial and overriding dissimilarities among the cases, considerations of fairness strongly suggest that the cases be handled entirely separately so that a clear distinction is preserved between a small number of different defendants who have entered guilty pleas to fundamentally different charges in unrelated cases, and the Transpacific defendants here, who have not.

Indeed, the only similarity between the three cases is that they allege conspiracies involving the airline industry, and even plaintiffs have already recognized that the differences among the allegations in the various MDL proceedings argue <u>against</u>, not in favor of, consolidation or coordination of these cases. Recently, the plaintiffs' firm that filed the motion to transfer here on behalf of the Wortman plaintiffs also filed a Joint Case Management Conference Statement in the *IAT MDL*, in which that same firm is co-lead counsel. In that filing, plaintiffs (and defendants) state that the *Korean MDL* cases "should not be consolidated or coordinated with the [*IAT MDL*] for any purpose because the *routes, markets, claimed passenger victims, time periods and defendant airlines* in the [*Korean MDL* cases] *differ* from those in the [*IAT MDL*]." *In re Int'l Air Trans. Surcharge Antitrust Litig.*, M:06-cv-1793, (Dkt. No. 167), at 6 (N.D. Cal. Sept. 17, 2007) (emphasis added) (attached hereto as Exhibit B). The same is true here.[7]

---

no mention of a passenger conspiracy, unlike the informations charging BA and Korean, which specifically charged BA and Korean, respectively, with conspiring to fix passenger rates. *See U.S. v. Qantas Airways Ltd.*, No. 07-cr-322 (D.D.C. Nov. 27, 2007); *U.S. v. British Airways PLC*, No. 07-cr-00183 (D.D.C. Aug. 1, 2007); *U.S. v. Korean Airlines Co., Ltd.*, No. 07-cr-00184 (D.D.C. Aug. 1, 2007).

[7] The fact that these three proceedings involve the same industry is simply insufficient to establish any meaningful relationship among them for purposes of achieving the goal of 28 U.S.C. § 1407(a). An analogy can be drawn to two other MDL cases that involve superficially similar conspiracies in the same industry: *In re Ciprofloxacin Hydrochloride Antitrust Litigation* ("*Cipro*") and *In re Tamoxifen Citrate Antitrust Litigation* ("*Tamoxifen*"). Plaintiffs in both cases alleged that the defendants – the brand-name manufacturer and the generic manufacturer – conspired to delay the entry of the respective generic drugs to the market. Despite the superficial

Therefore, for all the reasons set forth above, defendants respectfully submit that the Wortman Plaintiffs' proposal that the Transpacific Cases be assigned to the same court handling the *IAT MDL*, and perhaps the *Korean MDL*, would not "promote the just and efficient conduct of such actions," see 28 U.S.C. § 1407(a). Indeed, quite the opposite -- the Panel would be burdening a single judge with two or more MDL actions with very different facts, issues, parties and procedural postures.[8]

### B. The Honorable Jeffrey S. White is An Appropriate Judge To Preside Over The Transpacific Cases

While defendants do not dispute the logic of transfer to the Northern District of California,[9] in light of the considerations set out above, defendants respectfully suggest that the

---

similarities of these cases, this Panel transferred the two MDL proceedings to different judges in the same district. *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, No. 1383, 2000 U.S. Dist. LEXIS 18188 (J.P.M.L. 2000); *In re Tamoxifen Citrate Antitrust Litig.*, 196 F. Supp. 2d 1371 (J.P.M.L. 2001).

[8] Indeed, in light of the differences between the three MDL actions, whatever the Panel's decision on the motion to transfer the *Korean MDL* case, the Panel's action would support the transfer of these cases to a different court. If the Panel determines that the *Korean MDL* case should not be sent to the same court that is handling the *IAT MDL* action, obviously that determination would apply with even greater force here. If the Panel does send the *Korean MDL* case to the *IAT MDL* court, it will add two significant MDL class actions, in their early stages, to that court's caseload, which already includes the large and complex ATM Visa/Mastercard Intercharge Fee cases, which defendants understand have just entered the summary judgment phase.

[9] Defendants agree that the Transpacific Cases satisfy the statutory requirements for transfer and consolidation. *See, e.g., In re Apple iPod Nano Prods. Liab. Litig.*, 429 F. Supp. 2d 1366, 1367 (J.P.M.L. 2006) (transfer necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve resources of parties, counsel and judiciary); *In re Swine Flu Immunization Prods. Liab. Litig.*, 453 F. Supp. 648, 649 (J.P.M.L. 1978) (transfer would "best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"). Defendants also recognize that the San Francisco Division of the Northern District of California is a logical transferee district for these cases because all but one of the seven existing cases were filed and are currently pending in the Northern District of California; because many of the documents and witnesses relevant to the Transpacific Cases are present in the Northern District of California or can easily travel to San Francisco, a primary United States departure point for transpacific flights; and because the District Court for the Northern District of

Honorable Jeffrey S. White is a suitably qualified judicial officer to preside over the Transpacific Cases. Judge White was assigned to one of the original Transpacific Cases filed in the Northern District of California. *Ajaye v. Air New Zealand, et al.*, No. 07-05911 (N.D. Cal. Nov. 21, 2007). Judge White has substantial experience in both complex multidistrict and class action litigation. Indeed, this Panel has already recognized that Judge White is capable of handling a complex antitrust class action, having transferred such a multidistrict proceeding to Judge White in April 2006. *In re Ditropan XL Antitrust Litig.*, 429 F. Supp. 2d 1364, 1366 (J.P.M.L. 2006).

Further, Judge White's experience in presiding over comparable actions extends well beyond his work in the Ditropan litigation. *See, e.g., Jacobsen v. Katzer*, No. C 06-01905 JSW, 2006 WL 3000473 (N.D. Cal. Oct. 20, 2006); *Guichard v. Mandalay Pictures, LLC*, No. C 04-4363 JSW, 2005 WL 2007883 (N.D. Cal. Aug. 22, 2005); *Visa U.S.A. Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121 (N.D. Cal. 2005); *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992 (N.D. Cal. 2003). *Kendall v. Visa U.S.A. Inc.*, No. C 04-04276 JSW 2005 WL 2216941 (N.D. Cal. July 25, 2005) (class action); *Truck-Rail Handling, Inc. v. Burlington N. Santa Fe R.R. Co.*, No. C 02-02825 JSW, 2005 WL 1629949 (N.D. Cal. July 11, 2005). Indeed, Judge White has presided over 40 antitrust and trade regulation cases since January 1, 2002 (the earliest date for which such summary data is available). *See* West Legal Directory (last accessed on December 11, 2007).

Moreover, as far as defendants are able to determine, Judge White's caseload would allow him to devote sufficient resources to an MDL class action, providing further support for

---

California has extensive experience in handling complex antitrust class actions and is well-equipped with the resources to handle these cases.

9

the transfer to his court.[10] Judge White had 337 cases initiated on his docket this year, which is fewer than all but two (Judge Patel and Chief Judge Walker) non-senior judges in the Northern District of California. West Legal Directory (last accessed on December 11, 2007). Moreover, Judge White has a demonstrated ability to effectively administer his docket, having authored 211 opinions in 2007, more than all but four of the 18 judges in the Northern District of California. *Id.* Finally, Judge White is currently presiding over only one multidistrict litigation. Thus, defendants believe that the combination of Judge White's experience, familiarity with antitrust cases, and caseload make him the most logical and appropriate transferee judge for the Transpacific Cases.

### III. CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Panel transfer the Transpacific Cases to the Honorable Jeffrey S. White in the San Francisco Division of the Northern District of California.

Dated: December 14, 2007

Respectfully submitted,

William R. Sherman
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Washington, D.C. 20004
(202) 637-1094 (telephone)
(202) 637-2201 (facsimile)

*Counsel for Singapore Airlines Limited*

---

[10] This Panel considers the caseload of the transferee court in making its determination. *See In re American General Life & Acc. Ins. Co. Retiree Benefits "ERISA" Litig.*, 387 F. Supp. 2d 1361 (J.P.M.L. 2005) (transferee judge has "favorable caseload burden"); *In re Vioxx Products Liability Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005) (judge has capacity); *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380 (J.P.M.L. 2001).

Michael J. Holland
CONDON & FORSYTH LLP
7 Times Square
New York, NY 10036
(212) 894-6740 (telephone)
(212) 370-4453 (facsimile)

*Counsel for Air New Zealand, Ltd.*

Edward B. Schwartz
DLA PIPER US LLP
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4516 (telephone)
(202) 799-5156 (facsimile)

*Counsel for Cathay Pacific Airways, Ltd.*

William Karas
Kenneth P. Ewing
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 (telephone)
(202) 429-3902 (facsimile)

*Counsel for Japan Airlines International Co., Ltd.*

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 663-7822 (telephone)
(202) 663-7849 (facsimile)

*Counsel for Qantas Airways Limited*

Douglas E. Rosenthal
CONSTANTINE CANNON LLP
1627 I Street, N.W.
Washington, DC 20006
(202) 204-3510 (telephone)
(202) 204-3501 (facsimile)

Charles Simpson
ZUCKERT, SCOUTT & RASENBERGER, LLP
888 17th Street, N.W.
Washington, DC 20006
(202) 973-7926 (telephone)
(202) 342-0683 (facsimile)

*Counsel for All Nippon Airways Co., Ltd.*

James V. Dick
SQUIRE, SANDERS & DEMPSEY, L.L.P.
1201 Pennsylvania Avenue, N.W.
P.O. Box 407
Washington, D.C. 20044-0407
(202) 626-6600 (telephone)
(202) 626-6780 (facsimile)

*Counsel for China Airlines, Ltd.*

John F. Cove, Jr.
Kenneth F. Rossman IV
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
(510) 874-1000 (telephone)
(510) 874-1460 (facsimile)

*Counsel for Northwest Airlines*

Mark S. Priver
OHASHI & PRIVER
222 N. Sepulveda Boulevard, 20th Floor
El Segundo, CA 90245
(310) 364-5215 (telephone)

*Counsel for Thai Airways International Public Company Ltd.*

Richard J. Favretto
John Roberti
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000 (telephone)
(202) 263-3300 (facsimile)

*Counsel for United Air Lines Inc.*